# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

RICHARD ARJUN KAUL, MD
DAVID BASCH, MD

CASE NO.: 23-CV-2016 (JLR)

Plaintiffs

v.

**ADMISSION OF MATERIAL AND
UNDISPUTED FACT OF DEFENDANT
ROBERT HEARY**

ROBERT HEARY

Defendant.

---

Dated: April 24, 2023

## Context To Schemes And Violations

1. I admit that since approximately 1999, I have been a nationally recognized and highly influential leader within the political wing of the American neurosurgical community.

2. I admit that since approximately 1999, a substantial part of my time, effort and resources have been directed towards seizing power within the political wing of the American neurosurgical community.

3. I admit that since 1999 In have used this power to illegally exclude competition and to charge supra-competitive professional fees.

4. I admit that since 1999 my illegal charging of supra-competitive rates has caused me to illegally amass a personal material fortune.

5. I admit that my current personal net worth is in excess of five hundred million dollars ($500,000,000).

6. I admit that my personal net worth is in excess of five hundred million dollars ($500,000,000) was procured in large part through illegal schemes of racketeering, antitrust and violations of the civil, constitutional, and human rights of my competitors and others.

## Facts Admitted In K11-7 As Proof Of Claims In K11-10

7. I admit I know that some of the facts that substantiate and or otherwise prove my knowing violation of Plaintiff Kaul's human rights and of the claims levied against me in K11-10, were facts unambiguously asserted in support of the claims levied against me in K11-7 by Plaintiff Kaul.

8. I admit that I read the complaint and amended complaint filed against me by Plaintiff Kaul in K11-7 respectively on August 19, 2021 (D.E. 1) and September 13, 2021 (D.E. 14).

9. I admit that in K11-7 I was represented by counsel, who clarified and explained to me the nature, character and meaning of the facts asserted against me in both complaints.

10. I admit that I understood and understand the nature, character and meaning of the facts asserted against me in K11-7 in both the complaint and amended complaint.

11. I admit that on December 23, 2021, I filed a procedural motion to dismiss (D.E. 144/145) the amended complaint.

12. I admit that I know that in filing the procedural motion to dismiss the amended complaint, I had the right to deny the facts asserted by Plaintiff Kaul.

13. I admit that I did not deny the facts asserted by Plaintiff Kaul.

14. I admit that the reason I did not deny the facts asserted by Plaintiff Kaul is because they are true.

15. I admit that I know that I had the right to file a summary judgment motion to dismiss the amended complaint.

16. I admit that I did not file a summary judgment motion to dismiss the amended complaint.

17. I admit that the reason I did not file a summary judgment motion to dismiss is because I had no evidence or facts to disprove the summary judgment standard truth of the facts asserted by Plaintiff Kaul.

18. I admit that on January 13, 2022, I filed a reply (D.E. 156/157) to Plaintiff Kaul's January 13, 2022, opposition papers (D.E. 155) to my December 23, 2021, procedural motion to dismiss (D.E. 144/145).

19. I admit that I know that in filing my reply to Plaintiff Kaul's January 13, 2022, opposition papers (D.E. 155) to my December 23, 2021, motion (D.E. 144/145) I had the right to deny the

facts asserted by Plaintiff Kaul in his September 13, 2021, amended complaint (D.E. 14) and January 13, 2022, opposition papers (D.E 155).

20. I admit that I did not deny the facts asserted by Plaintiff Kaul in his September 13, 2021, amended complaint and or his January 13, 2022, opposition papers (D.E. 155).

21. I admit that the reason I did not deny the facts asserted by Plaintiff Kaul in K11-7 is because they are true.

22. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that the facts were asserted directly at me.

23. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that the nature, character and meaning of the facts had been explained and clarified to me by my counsel.

24. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that I completely understood the nature, character and meaning of the facts.

25. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that I had direct knowledge of the truthfulness of the facts.

26. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that I was directly involved in the perpetration of the facts.

27. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that although I had the right and ability to deny the facts, I did not, because the facts are true.

28. I admit that my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 constitutes a tacit admission of the facts in that the substantial body of fact asserted in the amended complaint required it be admitted, denied, or dismissed with contrary evidence or fact, and it was not.

29. I admit that the absence of any ambiguity in my silence in failing to deny the facts asserted by Plaintiff Kaul in K11-7 tacitly substantiates the asserted facts.

30. I admit that my counsel clarified and explained to me the civil nature of K11-7.

31. I admit that I know that K11-7 was a civil proceeding with civil consequences.

32. I admit that there existed and exist no other factors to explain my silence in failing to deny the facts, other than my knowledge that the facts were and are true.

33. I admit that during the pendency of K11-7, I was not subject to any state and or federal criminal investigations, in which a <u>denial</u> of the facts would have <u>deprived me of my right against self-incrimination</u>.

34. I admit that during the pendency of K11-7, I was not subject to any state and or federal criminal investigations, in which an <u>admittance</u> of the facts would have <u>deprived me of my right against self-incrimination</u>.

35. I admit that during the pendency of K11-7, I was not subject to any state and or federal criminal investigations, in which a <u>denial</u> of the facts would have <u>actually caused me to self-incriminate</u>.

36. I admit that during the pendency of K11-7, I was not subject to any state and or federal criminal investigations, in which an <u>admittance</u> of the facts would have <u>actually caused me to self-incriminate.</u>

37. I admit that I knew and know that if the facts were not true, I could have simply denied the facts asserted by Plaintiff Kaul in K11-7, <u>but I did not</u>.

38. I admit that my knowledge of the truth of the facts asserted in K11-7 constitutes the sole basis for my silence in failing to deny the facts

39. I admit that my knowledge of the truth of the facts asserted in K11-7 constitutes the sole basis for my actual failure to deny the facts.

40. I admit that I know that if I were innocent of the charges levied in K11-7 and K11-10, I would have simply denied the facts asserted in K11-7, but I did not, because I am guilty of the levied charges.

41. I admit that I read the September 12, 2022, opinion, and order of the district judge (D.E. 168).

42. I admit that in K11-7 I was represented by counsel, who clarified and explained to me the nature, character and meaning of the opinion and order of the district judge (D.E. 168).

43. I admit that I understood and understand the nature, character and meaning of the opinion and order of the district judge (D.E. 168).

44. I admit that I know that the district judge did not find that my silence in failing to deny the facts in any of <u>**The Kaul Cases**</u> does not constitute a tacit admission of the facts, <u>because the district judge knew that my silence did in fact constitute a tacit admission of the facts.</u>

45. I admit that I know that the district judge did not find that my actual failure to deny the facts in any of **The Kaul Cases** does not constitute a tacit admission of the facts, <u>because the district judge knew that my silence did in fact constitute a tacit admission of the facts</u>.

46. I admit that I know that the district judge in K11-7 did not find evidentially invalid my admissions of undisputed fact in K1, that were submitted into evidence in K11-7, <u>because the district judge did know that the K1 admissions of undisputed fact did prove the K11-7 claims</u>.

## The United Nations Universal Declaration Of Human Rights

47. I admit that I have read the attached document entitled 'Universal Declaration of Human Rights'

48. I admit that I have known about the 'Universal Declaration of Human Rights' since my attendance at college.

49. I admit that since my attendance at college there has been no diminution of my knowledge regarding the 'Universal Declaration of Human Rights'.

50. I admit that the absence of diminution of my knowledge regarding the 'Universal Declaration of Human Rights' is a consequence of my license mandated attendance at continuing medical education courses.

51. I admit that the continuing medical education courses involve modules on medical ethics and human rights.

52. I admit that certain courses have included modules on human rights violations committed during the Second World War by physicians associated with the Nazis.

53. I admit that I know, from these courses and my general reading, that the 'Universal Declaration of Human Rights' emerged in part as a consequence of human rights violations committed by physicians associated with the Nazis.

54. I admit that in 2005 I knew what rights were protected under the 'Universal Declaration of Human Rights'.

55. I admit that in 2005 I knew I was prohibited from conspiring to violate Plaintiff Kaul's fundamental human rights.

56. I admit that in 2005 I knew I was prohibited from violating Plaintiff Kaul's fundamental human rights.

57. I admit that in 2005 I knew it was illegal to conspire to violate Plaintiff Kaul's fundamental human rights.

58. I admit that in 2005 I knew it was illegal to violate Plaintiff Kaul's fundamental human rights.

59. I admit that since 2005 I have conspired with **The Kaul Cases** Defendants to knowingly and willfully abuse the power of the American State to purposefully violate Plaintiff Kaul's fundamental human rights.

60. I admit that the knowingness, willfulness, malicious-ness, and purposefulness in my conspiring with **The Kaul Cases** Defendants to violate Plaintiff Kaul's human rights is proven by the below admitted facts about which there is no material dispute.

61. I admit that the knowingness, willfulness, malicious-ness, and purposefulness of the violation of Plaintiff Kaul's human rights by myself and **The Kaul Cases** Defendants, is proven by the below admitted facts about which there is no material dispute.

62. I admit that the knowing, willful, malicious, and purposeful violation of Plaintiff Kaul's human rights is commensurate with the standard of that of a crime against humanity.

## Section 1983

## 2005 - 2010

63. I admit that because of my illegal schemes of public corruption that involved bribing Defendant Christie I became intertwined with, and in possession of state power and became a state actor.

64. I admit that because of my illegal schemes of public corruption that involved bribing members of the state government I became intertwined with, and in possession of state power and became a state actor.

65. I admit that because of my illegal schemes of public corruption that involved bribing members of the federal government I became intertwined with, and in possession of state power and became a state actor.

66. I admit that because of my illegal schemes of public corruption that involved bribing members of the state legislature I became intertwined with, and in possession of state power and became a state actor.

67. I admit that because of my illegal schemes of public corruption that involved bribing members of the state judiciary I became intertwined with, and in possession of state power and became a state actor.

68. I admit that because of my illegal schemes of public corruption that involved bribing members of the federal judiciary I became intertwined with, and in possession of state power and became a state actor.

69. I admit that my illegal schemes of public corruption and conspiring with state officials were perpetrated in a mutually beneficial and symbiotic manner.

70. I admit that my illegal schemes of public corruption and conspiring with state officials were perpetrated in a manner of mutual benefit and joint participation.

71. I admit that my illegal schemes of public corruption and conspiring with state officials were perpetrated in a manner of mutual benefit in which state officials and I used the US wires to exchange commands and words of encouragement in the successful execution of the schemes.

72. I admit that my illegal schemes of public corruption and conspiring with state officials were purposed to and did in fact cause me to illegally acquire the power and function of state, that I used to professionally threaten physicians who refused to support my schemes against Plaintiff Kaul.

73. I admit that my illegal schemes of public corruption and conspiring with state officials were purposed to and did in fact cause me to illegally acquire the power and function of state, that I used to have professionally investigated physicians who refused to support my schemes against Plaintiff Kaul.

74. I admit that my illegal schemes of public corruption and conspiring with state officials were purposed to and did in fact cause me to illegally acquire the power and function of state, that I used to professionally threaten physicians who attempted to expose my schemes.

75. I admit that my illegal schemes of public corruption and conspiring with state officials created a  nexus whereby the state's independently motivated scheme to have Plaintiff Kaul illegally eliminated was furthered under private cover of myself, neurosurgical societies, and other non-official persons, by amongst other things, defamation, and derogation of Plaintiff Kaul's right and qualifications to perform minimally invasive spine surgery.

## 2010 - 2023

76. I admit that I abused the immense power of my 'state actor' status to conspire to violate Kaul's  right to due process.

77. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in cases filed against Plaintiff Kaul in state boards within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of perjury.

78. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in cases filed against Plaintiff Kaul in state boards within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of evidential falsification.

79. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in cases filed against Plaintiff Kaul in state boards within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of witness tampering.

80. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in cases filed against Plaintiff Kaul in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of fraud.

81. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential omission</u>.

82. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the New Jersey Board of Medical Examiners to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>judicial-like corruption</u>

83. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>perjury</u>.

84. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential falsification</u>.

85. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>witness tampering</u>.

86. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>fraud</u>.

87. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential omission</u>.

88. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing judges of the New Jersey

Office of Administrative Law to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>judicial corruption</u>.

89. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>perjury</u>.

90. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential falsification</u>.

91. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>witness tampering</u>.

92. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>fraud</u>.

93. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential omission</u>.

94. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the Office of the New Jersey Attorney General to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>judicial-like and judicial corruption</u>.

95. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in

state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>perjury</u>.

96. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential falsification</u>.

97. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>witness tampering</u>.

98. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>fraud</u>.

99. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential omission</u>.

100. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of Defendant Christie's administration to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state boards and administrative courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>judicial-like and judicial corruption</u>.

101. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>perjury</u>.

102. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts

within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential falsification</u>.

103. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>witness tampering</u>.

104. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>fraud</u>.

105. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>evidential omission</u>.

106. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by participating with, facilitating and or directing members of the state judiciary to obstruct the course of justice in <u>cases filed against Plaintiff Kaul</u> in state courts within the geographic boundaries of New Jersey by committing and or facilitating the commission of schemes of <u>judicial corruption</u>.

107. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>state judiciary</u> to <u>dismiss all cases filed by Plaintiff Kaul</u> in state courts within the geographic boundaries of the state of New Jersey by committing and or facilitating the commission of schemes of <u>obstruction of justice</u>.

108. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>state judiciary</u> to <u>dismiss all cases filed by Plaintiff Kaul</u> in state courts within the geographic boundaries of the state of New Jersey by committing and or facilitating the commission of schemes of <u>public corruption</u>.

109. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>state government</u> to coerce state judges to <u>dismiss all cases filed by Plaintiff Kaul</u> in state courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>obstruction of justice</u>.

110. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>state government</u> to coerce state judges to <u>dismiss all cases filed by Plaintiff Kaul</u> in state courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>public corruption</u>.

111. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>federal judiciary</u> to <u>dismiss all cases filed by Plaintiff Kaul</u> in federal courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>obstruction of justice</u>.

112. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>federal judiciary</u> to <u>dismiss all cases filed by Plaintiff Kaul</u> in federal courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>public corruption</u>.

113. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>federal government</u> to coerce federal judges to <u>dismiss all cases filed by Plaintiff Kaul</u> in federal courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>obstruction of justice</u>.

114. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process by bribing and or otherwise corrupting members of the <u>federal government</u> to coerce federal judges to <u>dismiss all cases filed by Plaintiff Kaul</u> in federal courts within the geographic boundaries of the United States by committing and or facilitating the commission of schemes of <u>public corruption</u>.

115. I admit that I abused the immense power of my 'state actor' status to violate Plaintiff Kaul's right to due process and his property by conspiring with **The Kaul Cases** Defendants to illegally <u>deprive Plaintiff Kaul of the property of his accounts receivable and other assets</u> in the Chapter 11 proceedings in the bankruptcy court within the geographic boundaries of New Jersey by committing and or facilitating the commission of a scheme of <u>bankruptcy fraud</u>.

116. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his <u>economic standing</u> by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

117. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his <u>reputation</u> by obstructing, through

schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

118. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his livelihood by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

119. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his liberty by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

120. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his life by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

121. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his professional standing by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

122. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his social standing by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

123. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his psychological standing by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

124. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his physical standing by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

125. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate Plaintiff Kaul's right to regain his financial standing by obstructing, through schemes of judicial and public corruption, his due process right to litigate **The Kaul Cases** through discovery.

126. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his economic standing by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause  deprivation of his liberty.

127. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his economic standing by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

128. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his reputation by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause deprivation of his liberty.

129. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his reputation by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

130. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his livelihood by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause deprivation of his liberty.

131. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his livelihood by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

132. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his liberty by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause deprivation of his liberty.

133. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to

regain his <u>liberty</u> by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

134. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>life</u> by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause deprivation of his liberty.

135. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>life</u> by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

136. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>professional standing</u> by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause  deprivation of his liberty.

137. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>professional standing</u> by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

138. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>social standing</u> by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause deprivation of his liberty.

139. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>social standing</u> by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

140. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his <u>psychological standing</u> by obstructing, through schemes of public and private

corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause  deprivation of his liberty.

141. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his psychological standing by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

142. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his physical standing by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause  deprivation of his liberty.

143. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his physical standing by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

144. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his financial standing by obstructing, through schemes of public and private corruption, the return of the property of his New Jersey license, the illegal seizure of which continues to cause  deprivation of his liberty.

145. I admit that I abused and continue to abuse the immense power of my 'state actor' status to continue to violate, in conspiracy with **The Kaul Cases** Defendants, Plaintiff Kaul's right to regain his financial standing by obstructing, through schemes of public and private corruption, his efforts to restore his liberty through the procurement of a license anywhere in the world, including India, his country of citizenship.

146. I admit that from 2005 to 2016 the purpose of my willful, knowing, and ongoing abuse of my immense 'state actor' power was to perpetrate a scheme to violate Plaintiff Kaul's human and constitutional rights that involved, amongst other things, an ostracization of Plaintiff Kaul, a destruction of his economic standing, reputation and livelihood, the resultant deprivations of which caused and continue to cause conditions of homelessness, poverty and unemployment to him and his family.

147. I admit that from 2016 to 2023, and as a consequence of Plaintiff Kaul's prosecution of **The Kaul Cases**, I and others schemed and continue to scheme, in the violation of Plaintiff Kaul's right to due process in the United States District Court through the willful, knowing, and ongoing abuse of the immense power of our 'state actor' status, the scheme's purpose being an

attempt to prevent Plaintiff Kaul from exposing crimes committed by myself and those of **The Kaul Cases** Defendants in a period from at least 2005 to the present.

148. I admit that I used the US wires in a knowingly illegal manner to perpetrate schemes in which I conspired with **The Kaul Cases** Defendants to abuse the immense power of my 'state actor' status to violate Plaintiff Kaul's human and constitutional rights and cause and to continue to cause injury to his economic standing/reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing,

149. I admit that the schemes of knowing human and constitutional rights violations involved the illegal transmission across the US wires of hundreds of emails and telephone calls between myself, **The Kaul Cases** Defendants, and members of the Office of the New Jersey Attorney General.

150. I admit that the schemes of knowing human and constitutional rights violations involved the illegal transmission across the US wires of hundreds of emails and telephone calls between myself, **The Kaul Cases** Defendants, and members of the Office of the Office of the New Jersey Governor.

151. I admit that the schemes of knowing human and constitutional rights violations involved the illegal transmission across the US wires of hundreds of emails and telephone calls between myself, **The Kaul Cases** Defendants, and members of the New Jersey Office of Administrative Law.

152. I admit that the schemes of knowing human and constitutional rights violations involved the illegal transmission across the US wires of hundreds of emails and telephone calls between myself, **The Kaul Cases** Defendants, and members of the New Jersey Board of Medical Examiners.

## RICO:

### Overall Claim Admission

153. I admit to the fact that the below facts are undisputed, admitted and prove all elements of all claims asserted against me by Plaintiff Kaul.

154. I do not refute/contest/rebut/deny the evidence contained within the following documents: **(i)** The Waldman E-mail; **(ii)** The Zerbini Certification; **(iii)** The Sabo Certification; **(iv)** The Solomon Critique; **(v)** The Solomon Critique; **(vi)** The Calabrese Certification; **(vii)** The Przybylski Disciplinary Notice; **(viii)** The Feldman Certification; **(ix)** The Yeung E-mail; **(x)** The Union County Court proceedings; **(xi)** The Ciarrocca Complaint; **(xii)** The Federal Trade Commission Guidelines.

155. I admit that the evidence referenced in point **2.** is further proof of the undisputed-ness of the facts asserted in the Complaint.

### Element Specific Admissions

### Culpable Person Who Willfully Or Knowingly

156. I admit culpability for having willfully and knowingly engaged with other defendants in a pattern of racketeering, in a period that commenced in approximately 2006, in the State of New Jersey, and continued into 2022 in the United States District Court for the Southern District of New York.

157. I admit that I engaged in a pattern of racketeering with other defendants in a period that commenced in approximately 2006, continued into 2019 and occurred in multiple locations in the US, and across the US mail and wires.

158. I admit that I willfully and knowingly violated the law, when I engaged in a pattern of racketeering with other defendants, in which I abused the authority of state agencies and power by committing and or facilitating bribery, fraud, kickbacks, extortion, perjury, evidential falsification and witness tampering.

159. I admit that I knew the purpose of having engaged in a pattern of racketeering was to destroy the economic standing, reputation, and livelihood of Plaintiff Kaul.
### Commits Or Conspires To The Commission Of "Racketeering Activity"

160. I admit that in a period from 2006 to 2022, I conspired with other defendants in the commission of racketeering activity by using email, telephone and in person meetings to organize a knowingly illegal scheme that abused the authority of state agencies and power to have illegally revoked Kaul's New Jersey medical license, to illegally destroy Plaintiff Kaul's

economic standing, reputation, and livelihood and to obstruct justice and facilitate the commission of a 'Fraud on the Court' in the United States District Court by bribing or aiding and abetting a scheme of bribery of a federal judge in Kaul v ICE: 21-CV-06992, to have the case illegally dismissed with prejudice.

## Through A Pattern

161. I admit that in a period from 2006 to 2022 I engaged in an ongoing pattern of corruption of administrative, state, and federal courts within the geographic boundaries of the United States, the purpose of which was to deprive Plaintiff Kaul of any access to substantive justice, illegally deprive him of his medical license, his property, his livelihood, his reputation, his material assets, his access to banking services and to have him jailed, deported and or killed.

162. I admit that in a period from 2006 to 2019, I did in concert and conspiracy with other defendants, knowingly, willfully, and illegally convert administrative, state, and federal courts within the geographic boundaries of New Jersey into racketeering enterprises, to further the scheme to destroy the economic standing, reputation, and livelihood of Plaintiff Kaul.

## An Effect On Interstate Or Foreign Commerce

163. I admit that I and other defendants knew that the license revocation and destruction of the economic standing, reputation and livelihood of Plaintiff Kaul would prevent him from working anywhere in the world in any capacity, a trade restriction that would have a detrimental effect on interstate and or foreign commerce, and reduce federal tax revenues.

164. I admit that after the widely publicized revocation of Plaintiff Kaul's license on March 12, 2014, I participated with other defendants in hundreds of email, telephone and in person communications, in which we celebrated the destruction of Kaul's livelihood, economic standing, reputation and inability to find employment.

165. I admit that after the revocation of Plaintiff Kaul's license on March 12, 2014, I participated with other defendants in hundreds of email, telephone and in person communications, in which we predicted and celebrated the imminent descent of Kaul and his family into poverty.

## Purpose

166. I admit that commencing in approximately 2006, I in concert and conspiracy with other defendants have engaged in schemes of bribery, fraud, evidential tampering, witness tampering, public corruption and kickbacks conducted through and facilitated by state actors, agencies, and administrative, state, and federal courts within the geographic boundaries of the United States.

167. I admit that I knew that the purpose of the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption and kickbacks was to destroy the economic standing, reputation, and livelihood of Plaintiff Kaul,

168. I admit that I knew the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption and kickbacks were illegal.

## 2005 – 2010

169. I admit that in or around mid-2005, I came to know, and it became widely known within the spine community that Plaintiff Kaul had invented and successfully performed the first outpatient minimally invasive spinal fusion.

**RICO Predicate Act Of Bribery**

170. I admit that in approximately 2005, after Plaintiff Kaul invented and performed the first minimally invasive outpatient spinal fusion, I and others in the American neurosurgical and orthopedic communities concluded his expertise in outpatient minimally invasive spine surgery presented a substantial and expanding threat to our hospital-based spine business.

171. I admit that commencing in approximately 2005/2006 I conspired with certain senior members of the American neuro-ortho surgical community to commence perpetrating a scheme of bribery with, amongst others, the then New Jersey Governor, Christopher J. Christie.

172. I admit that I used my position of power within the political wing of the American neurosurgical community to knowingly deceive its members into participating in the scheme of bribery that involved funneling money to the then New Jersey Governor, Christopher J. Christie.

173. I admit that I knew that in the conception and perpetration of the scheme of bribery I would violate and did in fact violate the law.

174. I admit that I knew that in the conception and perpetration of the scheme of bribery I would deprive and did in fact deprive Plaintiff Kaul of his human and constitutional rights.

175. I admit that I knew that in the conception and perpetration of the scheme of bribery I would illegally coopt and did in fact illegally coopt the power of state.

176. I admit that I knew that through the coopting of the power of state I would become and did in fact became a 'state actor'

177. I admit that I knew that with the power of the state and as a 'state actor' I would deprive and did in fact deprive Plaintiff Kaul of his human and constitutional rights.

178. I admit that I knew that with the power of the state and as a 'state actor' it was my intention to deprive Plaintiff Kaul of his human and constitutional rights.

179. I admit that I knew that my deprivation of Plaintiff Kaul's human and constitutional rights was intended to ensure the cessation of his existence.

180. I admit that I knew that my intention to cause the cessation of Plaintiff Kaul's existence was based on my effort to ensure he did not expose the scheme of bribery.

181. I admit that I knew of the immense criminal consequences to me and others if Plaintiff Kaul exposed our scheme of bribery.

182. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to destroy Plaintiff Kaul's livelihood.

183. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to destroy Plaintiff Kaul' economic standing,

184. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to destroy Plaintiff Kaul' reputation.

185. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to have Plaintiff Kaul incarcerated.

186. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to force Plaintiff Kaul's family into a state of poverty.

187. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to alienate Plaintiff Kaul from his children by forcing them into poverty.

188. I admit that my specific intention in aiding and abetting the perpetration of the scheme of bribery was to cause Plaintiff Kaul to commit suicide.

189. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to Defendant Christie in a quid pro quo exchange for him using his executive and ex-US Attorney political power to have violated Plaintiff Kaul's human and constitutional rights.

190. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to Defendant Christie in exchange for him using his executive and ex-US Attorney political power to have Plaintiff Kaul criminally investigated by state and federal authorities.

191. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in a quid pro quo exchange promised to use, and did use the power of state to have Plaintiff Kaul's license illegally revoked.

192. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in a quid pro quo exchange promised to use, and did use the power of state to have conducted grand jury proceedings against Plaintiff Kaul.

193. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in a quid pro quo exchange promised to use, and did use the power of state to conduct grand jury proceedings to attempt to have Plaintiff Kaul indicted and incarcerated.

194. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in a quid pro quo exchange promised to coerce, and did coerce the power of the FBI and the US Attorney's Office to commence a criminal investigation against Kaul.

195. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in a quid pro quo exchange promised to use, and did use his ex-US Attorney political power to cause to commence a federal criminal investigation against Kaul.

196. I admit that the scheme of bribery in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use his executive power to cause state investigators and prosecutors to commence state criminal investigations against Kaul.

197. I admit that the bribe monies were funneled to Defendant Christie through law firms, political lobbyists, and public relation firms with which he was politically and or commercially connected in any manner.

198. I admit that I knew the purpose of funneling the bribe monies through law firms, political lobbyists, and public relation firms, was to attempt to conceal the true quid pro quo bribery nature of the monies.

199. I admit that I knew and know that the true quid pro quo bribery nature of the monies rendered my transactions illegal.

200. I admit that I knew and know that I did not inform my bank of the true quid pro quo bribery nature of the transacted monies.

201. I admit that I knew and know that my transferring of the quid pro quo bribery monies constitutes bank fraud.

202. I admit that I knew and know that my commission of bank fraud constitutes a crime.

203. I admit that I knew and know that my commission of bank fraud involved the commission of wire fraud.

204. I admit that I knew and know that the purpose of attempting to conceal the true bribery nature of the monies was my concern that my crimes would be exposed.

205. I admit that I knew and know that the purpose of the concealment of my quid pro quo bribery crimes would have been to falsely claim that the bribe monies paid to law firms, political lobbyists, and public relation firms with which Defendant Christie was politically and or commercially connected in any manner, was for professional legal, lobbying and or public relation services.

206. I admit that I knew and know that such a claim would have been false.

207. I admit that I know that I cannot raise such a professional services defense in either this case and or any other civil and or criminal case that might ever be filed against me.

208. I admit that I knew and know that my lawyers advised me as to the scheme of concealment.

209. I admit that in the period from 2005/2006 to 2022, the scheme of bribery expanded to involve an increasing number of persons conducting business within the private and public sectors.

210. I admit that these persons include state and federal investigators.

211. I admit that these persons include state and federal prosecutors.

212. I admit that these persons include state and federal judges.

213. I admit that these persons include personal injury lawyers.

214. I admit that these persons include physicians who competed against Plaintiff Kaul in the minimally invasive spine surgery market.

215. I admit that these persons/entities included journalists/media organizations who have commercial relationships with **The Kaul Cases** Defendants and or within referenced Third Parties.

216. I admit that these persons include Plaintiff Kaul's ex-patients, whom I and others conspired with the file lawsuits and complaints with the medical board.

217. I admit that these persons include Plaintiff Kaul's ex-physician employees, whom I and others conspired with to provide false legal testimony against Plaintiff Kaul.

218. I admit that these persons include Plaintiff Kaul's ex-nursing employees, whom I and others conspired with to provide false legal testimony against Plaintiff Kaul.

**RICO Predicate Act Of Fraud**

219. I admit that as a consequence of Plaintiff Kaul having invented and successfully performed the first outpatient minimally invasive spinal fusion, I, along with other spine physicians, commenced conspiring to perpetrate a scheme of fraud, in order to attempt to obstruct Plaintiff Kaul's practice of minimally invasive spine surgery.

220. I admit that the purpose of the scheme of fraud was to obstruct and destroy Plaintiff Kaul's minimally invasive spine surgery practice.

221. I admit that another purpose of the scheme of fraud was to intimidate other physicians, similarly, trained as Plaintiff Kaul, from performing minimally invasive spine surgery.

222. I admit that the scheme of fraud in which I knowingly engaged, involved the public dissemination, and or the aiding and abetting of public dissemination, of the knowing falsehood that Plaintiff Kaul was not qualified/licensed/credentialed to perform minimally invasive spine surgery.

223. I admit that in the perpetration of the scheme of fraud I knew that Kaul was in fact legally qualified, credentialed and licensed to perform surgery, including minimally invasive spine surgery.

224. I admit that in the perpetration of the scheme of fraud I conspired with Drs. Andrew Kaufman and Gregory Przybylski in the subornation of perjury in the legal proceedings that caused the revocation of Plaintiff Kaul's license, in which they testified, with knowing falsity, that Plaintiff Kaul was not qualified to perform minimally invasive spine surgery, and had grossly deviated from a standard of care.

225. I admit that the scheme of fraud in which I knowingly engaged, involved the dissemination, and or the aiding and abetting of dissemination into courts of law of the knowingly falsehood that Plaintiff Kaul was not qualified/licensed/credentialed to perform minimally invasive spine surgery.

**a. Public Obstruction**

226. I admit that the perpetration of the scheme of fraud involved encouraging and coopting Plaintiff Kaul's patients to sue him by telling them, with knowing falsity, that Plaintiff Kaul had not been qualified/credentialed/licensed/trained to perform minimally invasive spine surgery on them.

227. I admit that the perpetration of the scheme of fraud involved encouraging and coopting Plaintiff Kaul's patients to file medical board complaints against him by telling them, with knowing falsity, that Plaintiff Kaul had not been qualified/credentialed/licensed/trained to perform minimally invasive spine surgery on them.

**b. Legal Profession Obstruction**

228. I admit that the perpetration of the scheme of fraud involved encouraging and coopting lawyers to file malpractice suits on behalf of Plaintiff Kaul's patients referred to them by me, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

229. I admit that the perpetration of the scheme of fraud involved encouraging and coopting personal injury lawyers to stop referring their injured clients to Plaintiff Kaul, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

**c. Healthcare Profession Obstruction**

230. I admit that the perpetration of the scheme of fraud involved encouraging and coopting other physicians to not refer patients to Plaintiff Kaul by telling them, with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

231. I admit that the perpetration of the scheme of fraud involved encouraging and coopting surgical centers and hospitals to not provide Plaintiff Kaul hospital privileges by telling credentialing committee physicians, with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

232. I admit that the perpetration of the scheme of fraud involved encouraging and coopting other physicians to file medical board complaints against Plaintiff Kaul by telling the medical board, with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery on them.

233. I admit that the perpetration of the scheme of fraud involved encouraging and coopting medical device representatives to not provide Plaintiff Kaul the necessary minimally invasive spine surgery devices, by telling them, with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

234. I admit that the perpetration of the scheme of fraud involved threatening medical device representatives that if they provided Plaintiff Kaul with the necessary minimally invasive spine surgery devices, I would use my immense political power to coerce other neurosurgeons to stop using their devices.

**d. Insurance Industry Obstruction**

235. I admit that the perpetration of the scheme of fraud involved conspiring with the insurance industry to illegally deny professional reimbursement to Plaintiff Kaul,

236. I admit that the fraudulent scheme of theft of services was perpetrated with physicians employed by the insurance industry, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

237. I admit that the purpose of the fraudulent scheme of theft of services, was an attempt to exhaust Plaintiff Kaul's business resources.

238. I admit that I knew that the purpose of the fraudulent scheme of theft of services was an attempt to cause a liquidation of Plaintiff Kaul's business by causing a cessation of revenue.

239. I admit that in the perpetration of the fraudulent scheme of theft of services, I conspired with physicians and persons associated with the insurance industry to have illegally diverted to me monies that should have been paid to Plaintiff Kaul.

240. I admit that I believed that the fraudulent scheme of theft of services would cause immense financial hardship to Plaintiff Kaul.

241. I admit that I believed this immense financial hardship would illegally force Plaintiff Kaul out of the minimally invasive spine surgery market.

242. I admit that I believed that if I caused this immense financial hardship to Plaintiff Kaul, he would be forced to engage in unlawful conduct.

243. I admit that I intended for this immense financial hardship to cause Plaintiff Kaul to engage in unlawful conduct.

244. I admit that I intended to have the imagined unlawful conduct cause Plaintiff Kaul to be jailed.

**e. Political Body Obstruction**

245. I admit that in or around 2007, I and other members of the neurosurgical and orthopedic spine community, recognized that the tactics of our scheme of fraud had failed to eliminate Plaintiff Kaul from the minimally invasive spine surgery market.

246. I admit that in recognizing the failure of our scheme of fraud and its tactics of interfering in Plaintiff Kaul's minimally invasive spine surgery business, I, as a political leader within the neurosurgical community, decided to bribe Defendant Christopher J. Christie to have him use his executive power to order the medical board to revoke Plaintiff Kaul's medical license.

247. I admit that I and **The Kaul Cases** Defendants knew and know that the Plaintiff Kaul elimination scheme was directly tied to the coopting and capture of the political body and its members.

248. I admit that I and **The Kaul Cases** Defendants knew and know and that there was a direct connection between the coopting and capture of the political body and its members and Plaintiff Kaul's ability to expose my crimes and those of **The Kaul Cases** Defendants.

249. I admit that Plaintiff Kaul's exposition of my crimes and those of **The Kaul Cases** Defendants, despite the coopting and capture of the political body and its members, evidences the fact that I and **The Kaul Cases** Defendants  committed with a long-standing sense of privileged impunity, a massive amount of felonious conduct over almost two (2) decades.

250. I admit that Defendant Christie was the US Attorney for the District of New Jersey from 2000 to 2008.

251. I admit that Defendant Christie was the Governor for the State of New Jersey from 2009 to 2017.

252. I admit that between 2012 to 2016 Defendant Christie campaigned in pursuit of the Replication nomination for the 2016 Presidential Campaign.

253. I admit that between 2016 to 2020, Defendant Christie closely collaborated with President Trump in the nomination of federal judges within the United States Court of Appeals for the Third Circuit.

254. I admit that between 2016 to 2020, Defendant Christie closely collaborated with President Trump in the nomination of persons to federal agencies.

255. I admit that commencing in approximately 2005, Defendant Christie began seeking financial support for his 2009 political campaign for the governor's office.

256. I admit that I knew the failure of the tactics of our scheme of using the US wires to transmit knowingly fraudulent information to members of the public, the legal profession, the healthcare profession, and the insurance industry, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery, left me, as the leader of the neurosurgical community, with no option but to bribe Defendant Christie.

257. I admit that I, as a political leader within the immensely powerful and wealthy neurosurgical community, and its Political Activation Committee, did commence a dialogue with Defendant Christie.

258. I admit that a principal purpose of the dialogue pertained to the delineation of the quid pro quo scheme between myself, the neurosurgical society members, and Defendant Christie.

259. I admit that during the dialogues we discussed the exact nature of the quid pro quo deal in terms of when and what monetary and non-monetary bribes would be exchanged for what elements of the scheme to eliminate Plaintiff Kaul.

260. I admit that the dialogue surrounding the quid pro quo deal was akin to discussions surrounding the enactment of terms of a contract.

261. I admit that I knew and know the purpose and substance of the dialogue and the enactment of the terms were illegal elements of an overall criminal scheme that involved the commission of a course of an ongoing pattern of knowingly felonious conduct.

262. I admit that the principal purpose of the quid pro quo purposed dialogue pertained to the scheme to eliminate Plaintiff Kaul.

263. I admit that the dialogues were conducted using both digital and non-digital modes of communication.

264. I admit that the communications involved many individuals associated with the political, legal, medical, healthcare business and media worlds.

265. I admit that a principal part of the dialogue involved detailing the methods of how I and **The Kaul Cases** Defendants  would achieve our objectives to eliminate Plaintiff Kaul.

266. I admit that in the dialogue we described the exact method of how we would eliminate Plaintiff Kaul.

267. I admit that the exact method involved using the coercive power of all branches of the State of New Jersey, the media, the political body, the insurance industry, the legal community, the medical community, and the public to attack and undermine Plaintiff Kaul's economic standing/reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing.

268. I admit that I conspired with, amongst others, Drs. Andrew Kaufman, Gregory Przybylski and Peter Carmel, to fraudulently coopt our medical societies and their members into directing their monies into the gubernatorial and presidential political campaigns of Defendant Christie.

269. I admit that I knew it was critical to my scheme of fraud, that I concealed from the members of our medical societies that their monies were in fact bribes, the true purpose of which was to fund a knowingly illegal quid pro quo scheme with Defendant Christie, purposed to illegally revoke Plaintiff Kaul's license.

270. I admit that in a period between 2005 and 2010 I, along with several other politically active neurosurgeons and orthopedic spine surgeons, met on several occasions with Defendant Christie.

271. I admit that that the purpose of these meetings was to discuss the perpetration of the scheme to revoke Plaintiff Kaul's license.

272. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he had received the bribes.

273. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to initiate legal proceedings to revoke Plaintiff Kaul's license.

274. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to order the medical board to suspend and then revoke Plaintiff Kaul's license.

275. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to instruct the New Jersey state bar to order it's members to refuse to support Plaintiff Kaul.

276. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to instruct the New Jersey medical community to refuse to support Plaintiff Kaul.

277. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to instruct the New Jersey plaintiffs' bar to file lawsuits against Plaintiff Kaul.

278. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to instruct the New Jersey judicial community to dismiss any cases filed by Plaintiff Kaul.

279. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to instruct the New Jersey media community to publish highly defamatory articles about Plaintiff Kaul.

280. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to order **The Kaul Cases** Defendant, and New Jersey Administrative Law Judge, Jay Howard Solomon, to recommend revocation of Plaintiff Kaul's license.

281. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to order **The Kaul Cases** Defendant, and New Jersey Administrative Law Judge, Jay Howard Solomon, to recommend revocation of Plaintiff Kaul's license regardless of the evidence presented by Plaintiff Kaul.

282. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to order **The Kaul Cases** Defendant, and New Jersey Administrative Law Judge, Jay Howard Solomon, to falsify his opinion if necessary to ensure the revocation of Plaintiff Kaul's license regardless of the evidence presented by Plaintiff Kaul.

283. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to use the US wires to disseminate to the New Jersey media community copies of legal documents that perpetrated the knowing fraud that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

284. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to use the US wires to disseminate to the New Jersey legal community copies of legal documents that perpetrated the knowing fraud that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

285. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to use the US wires to disseminate to the New Jersey judicial community copies of legal documents that perpetrated the knowing fraud that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

286. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to use the US wires to disseminate to the New Jersey insurance community copies of legal documents that perpetrated the knowing fraud that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

287. I admit that during these meetings I had several conversations with Defendant Christie, in which he confirmed that he would order, and did in fact order his attorney general to use the US wires to disseminate to the New Jersey medical community copies of legal documents that perpetrated the knowing fraud that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

288. I admit that during these meetings I had several conversations with Defendant Christie, in which I confirmed that I had persuaded **The Kaul Cases** Defendants, Drs. Andrew Kaufman and Gregory Przybylski, to testify, albeit with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

289. I admit that during these meetings I had several conversations with Defendant Christie, in which I confirmed that once Plaintiff Kaul's license was revoked, I would use my political power

within the neurosurgical societies to have its members support Defendant Christie's 2016 presidential campaign.

290. I admit that in late 2009, I was informed by persons associated with Defendant Christie that a preliminary evaluation committee of the New Jersey medical board had ordered Plaintiff Kaul to appear before them on February 3, 2010.

291. I admit that I knew the February 3, 2010, hearing was the first procedural step in a series of legal proceedings, in which the outcome of the illegal revocation of Plaintiff Kaul's license was a foregone conclusion.

292. I admit that I knew, based on my conversations with Defendant Christie, that one purpose of legal proceedings was to provide the public an appearance of justice.

293. I admit that I knew, based on my conversations with Defendant Christie, that one purpose of the highly publicized legal proceedings was to destroy Plaintiff Kaul's reputation.

294. I admit that I knew, based on my conversations with Defendant Christie, that one purpose of the highly publicized legal proceedings was to fabricate a legal record to justify the crime against Plaintiff Kaul.

295. I admit that I knew, based on my conversations with Defendant Christie, that one purpose of a state fabricated legal record, other than justifying the crime, would be to submit it as a defense if Plaintiff Kaul exposed the crimes and filed suit.

296. I admit that I knew, based on my conversations with Defendant Christie, that if I or any of **The Kaul Cases** Defendants used the state fabricated legal record as a defense, it was expected that nobody would believe Plaintiff Kaul because of his prior history in the UK.

297. I admit that I knew, based on my conversations with Defendant Christie, that if I or any of **The Kaul Cases** Defendants used the state fabricated legal record as a defense, it was expected that nobody would believe Plaintiff Kaul because of his prior history in New Jersey.

298. I admit that I knew, based on my conversations with Defendant Christie, that if I or any of **The Kaul Cases** Defendants used the state fabricated legal record as a defense, it was expected that nobody, including judges, would believe Plaintiff Kaul because by the time his license was revoked, myself and **The Kaul Cases** Defendants would have destroyed his reputation.

299. I admit that I knew, based on my conversations with Defendant Christie, that if I or any of **The Kaul Cases** Defendants used the state fabricated legal record as a defense, it was expected that nobody, including judges, would believe Plaintiff Kaul's claims.

300. I admit that I knew, based on my conversations with Defendant Christie, that even if anybody believed Plaintiff Kaul, by the time he exposed the crimes of myself and **The Kaul**

**Cases** Defendants, he would be bankrupted, unable to retain a lawyer and thus unable to prosecute a claim.

301. I admit that I knew, based on my own long-standing pattern of public corruption and on my conversations with Defendant Christie, that even if Plaintiff Kaul acquired sufficient legal knowledge to file his own claim, it would be dismissed because I and others would bribe the judges.

302. I admit that based on my experience of my long-standing pattern of public corruption and on my conversations with Defendant Christie and certain members of **The Kaul Cases** Defendants, I was convinced that my crimes would destroy Plaintiff Kaul's economic standing, reputation, livelihood, reputation, and life and illegally deprive him of his liberty.

303. I admit that based on my experience of my long-standing pattern of public corruption and on my conversations with Defendant Christie and certain members of **The Kaul Cases** Defendants, I was convinced in 2010 that Plaintiff Kaul would never expose my crimes.

304. I admit that in the period from 2005 to 2010 I was successful in corrupting and manipulating persons and agencies of the State of New Jersey into the commission of a criminal course of conduct that caused and involved the commencement on February 3, 2010, of the first procedural legal step in the illegal revocation of Plaintiff Kaul's license.

305. I admit that based on my conviction that my crimes would go un-exposed, I did with a sense of impunity, perpetrate, aid, and abet and collaborate in the willful and knowing commission of a scheme of felonious conduct that commenced in or around 2005 in the State of New Jersey and extended through 2010 into 2023, as do its permanent consequences, in, amongst others, the district courts of the United States District Court, American state/federal governments, the Courts of India, and the internet.

## 2010 – 2016

**RICO Predicate Act Of Fraud**

**a. Public Obstruction**

306. I admit that after Plaintiff Kaul's interrogation by a preliminary evaluation committee of the New Jersey medical board on February 3, 2010, I became further emboldened in the scheme of fraud.

307. I admit that in becoming further emboldened in the scheme of fraud, my efforts to alienate Plaintiff Kaul from the public became amplified.

308. I admit these amplified efforts of fraud included recruiting other physicians and surgeons to encourage and coopt any of Plaintiff Kaul's patients to whom they had ever provided care, to sue him by telling them, albeit with knowing falsity, that Plaintiff Kaul had not been qualified/credentialed/licensed/trained to perform minimally invasive spine surgery on them.

309. I admit these amplified efforts of fraud included recruiting other physicians and surgeons to encourage and coopt any of Plaintiff Kaul's patients to whom they had ever provided care, to file medical board complaints against him by telling his patients, albeit with knowing falsity, that Plaintiff Kaul had not been qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

310. I admit these amplified efforts of fraud included using the US wires, and encouraging others to use the US wires, to coopt the public into becoming a 'mob' that attacked Plaintiff Kaul online with highly defamatory posts and publications.

311. I admit I believed that by having this 'mob' attack Plaintiff Kaul online and in the court of public opinion, he would be deterred from fighting the publicly conducted legal proceedings.

312. I admit I believed that by having this 'mob' attack Plaintiff Kaul online and in the court of public opinion, he would be deprived in the board and administrative proceedings of any testimonial support from his patients.

313. I admit I believed that the 'mob' induced deprivation of public and patient support would cause Plaintiff Kaul to become socially ostracized and completely isolated.

314. I admit the purpose of ostracizing and isolating Plaintiff Kaul was to render him financially unable to fight the case in the courts of law and public opinion.

315. I admit the purpose of ostracizing and isolating Plaintiff Kaul was to render him psychologically unable to fight the case in the courts of law and public opinion.

316. I admit the purpose of ostracizing and isolating Plaintiff Kaul was to render him socially unable to fight the case in the courts of law and public opinion.

317. I admit the purpose of ostracizing and isolating Plaintiff Kaul was to render him physically unable to fight the case in the courts of law and public opinion.

318. I admit that a purpose of attempting to render Plaintiff Kaul unable to fight, was to attempt to ensure he did not expose my crimes of those of **The Kaul Cases** Defendants.

319. I admit that a purpose of attempting to ensure Plaintiff Kaul did not expose my crimes and those of **The Kaul Cases** Defendants, was my recognition that such an exposure would evidence the illegality of the events preceding the revocation proceedings.

320. I admit that a purpose of attempting to ensure Plaintiff Kaul did not expose my crimes and those of **The Kaul Cases** Defendants, was my recognition that such an exposure would evidence the illegality of the revocation proceedings.

321. I admit that a purpose of attempting to ensure Plaintiff Kaul did not expose my crimes and those of **The Kaul Cases** Defendants, was my recognition that such an exposure would evidence the illegality of the revocation itself.

322. I admit that that a purpose of attempting to ensure Plaintiff Kaul did not expose my crimes and those of **The Kaul Cases** Defendants, was my recognition that such an exposure would subject me to criminal indictment.

323. I admit that I, in conspiracy with **The Kaul Cases** Defendants, and other third media related parties, did use the US wires to publish over twenty-two (22) highly defamatory and knowingly false stories about Plaintiff Kaul.

324. I admit that I knew the purpose of these highly defamatory stories was to ostracize Plaintiff Kaul.

325. I admit that I knew the purpose of these highly defamatory stories was to socially isolate Plaintiff Kaul.

326. I admit that I knew the purpose of these highly defamatory stories was to render Plaintiff Kaul financially unable to fight the case in the courts of law and public opinion.

327. I admit that I knew the purpose of these highly defamatory stories was to render Plaintiff Kaul psychologically unable to fight the case in the courts of law and public opinion.

328. I admit that I knew the purpose of these highly defamatory stories was to render Plaintiff Kaul physically unable to fight the case in the courts of law and public opinion.

329. I admit that I knew the purpose of these highly defamatory stories was to render Plaintiff Kaul socially unable to fight the case in the courts of law and public opinion.

330. I admit that I knew the purpose of these highly defamatory stories was to attempt to 'break the spirit' of Plaintiff Kaul.

331. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the professional re-emergence of Plaintiff Kaul.

332. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the financial re-emergence of Plaintiff Kaul.

333. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the reputational re-emergence of Plaintiff Kaul.

334. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the psychological re-emergence of Plaintiff Kaul.

335. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the social re-emergence of Plaintiff Kaul.

336. I admit that I knew the purpose of these highly defamatory stories was to attempt to prevent the physical re-emergence of Plaintiff Kaul.

337. I admit that I knew and know that the professional re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

338. I admit that I knew and know that the financial re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

339. I admit that I knew and know that the psychological re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

340. I admit that I knew and know that the social re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

341. I admit that I knew and know that the physical re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

342. I admit that I knew and know that the reputational re-emergence of Plaintiff Kaul would expose, and has exposed my crimes and those of **The Kaul Cases** Defendants.

343. I admit that I knew the purpose of these highly defamatory stories was to attempt to cause an effective cessation of Plaintiff Kaul's existence.

344. I admit that had an effective cessation of Plaintiff Kaul's existence been caused to occur, then my crimes and those of **The Kaul Cases** Defendants would never have been exposed, as they are now.

345. I admit that I knew the purpose of these highly defamatory stories was to attempt to have Plaintiff Kaul commit suicide.

346. I admit that had Plaintiff Kaul been caused to commit suicide, then my crimes and those of **The Kaul Cases** Defendants would never have been exposed, as they are now.

**b. Legal Profession Obstruction**

347. I admit, as detailed in the below admitted facts, a direct connection between Plaintiff Kaul's ability to retain counsel in 2013 to litigate the illegal revocation proceedings and the exposing in 2023 of my involvement in a criminally minded and criminal scheme that commenced in 2005 and expanded to involve **The Kaul Cases** Defendants and others.

348. I admit that in recognizing the direct connection between Plaintiff Kaul's litigation purposed retention of counsel and the exposing of my crimes, I did conspire with **The Kaul Cases** Defendants to attempt to sabotage the relationship between Plaintiff Kaul and his counsel.

349. I admit that I and members of **The Kaul Cases** Defendants perpetrated a fraud on members of the New Jersey State Bar by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

350. I admit that I conspired with other members of **The Kaul Cases** Defendants, including Defendant Christie and members of the Office of the New Jersey Attorney General, to instruct members of the New Jersey State Bar to not provide legal representation to Plaintiff Kaul.

351. I admit that I used my political power within the neurosurgical societies to coerce its members to refuse to provide expert opinions to members of the state bar, if any members of its members provided legal representation and or advice to Plaintiff Kaul.

352. I admit that I knew the purpose of my fraudulent scheme on members of the New Jersey State Bar was to render Plaintiff Kaul unable to find legal representation to fight the revocation proceedings in the courts of law.

353. I admit that I knew that without legal representation, Plaintiff Kaul would not have been able to contest the revocation proceedings.

354. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his economic standing would deprive him of funds, and prevent the payment of legal fees.

355. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his reputation would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of legal fees.

356. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his physician livelihood would deprive him of his ability to earn a wage, and prevent the payment of legal fees.

357. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his liberty would deprive him of his ability to earn any wage-paying job, and prevent the payment of legal fees.

358. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his life would deprive him of his ability to earn any wage-paying job, and prevent the payment of legal fees.

359. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his professional standing would deprive him of his ability to earn any wage-paying job, and prevent the payment of legal fees.

360. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his social standing would deprive him of his ability to earn any wage-paying job, and prevent the payment of legal fees.

361. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his social standing would deprive him of his ability to secure any wage-paying job, and prevent the payment of legal fees.

362. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his psychological standing would deprive him of his ability to secure any wage-paying job, and prevent the payment of legal fees.

363. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his physical standing would deprive him of his ability to secure any wage-paying job, and prevent the payment of legal fees.

364. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his financial standing would deprive him of funds and prevent the payment of legal fees.

365. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of legal representation by using the US wires to manipulate his counsel with claims that the injury caused by our scheme to his reputational standing would deprive him of his ability to secure any wage-paying job, and prevent the payment of legal fees

366. I admit that I knew that without contesting the revocation proceedings, Plaintiff Kaul would not have been able to create a record of the evidential fraud committed and aided and abetted by myself and **The Kaul Cases** Defendants.

367. I admit that I knew that without the record of evidential fraud, Plaintiff Kaul would never have been able to generate proof of the fraud preceding the revocation proceedings.

368. I admit that I knew that without the record of evidential fraud, that even if Plaintiff Kaul had considered the illegality of the circumstances preceding and involving the revocation, he would never have been able to generate proof of the fraud committed before and during the revocation proceedings.

369. I admit that Plaintiff Kaul's ability to retain counsel to litigate the revocation proceedings caused the generation of evidence that now proves the revocation proceedings were and illegal.

370. I admit that Plaintiff Kaul's ability to retain counsel to litigate the revocation proceedings caused the generation of evidence that now proves the revocation was and is illegal.

371. I admit that without counsel to litigate the revocation proceedings, Plaintiff Kaul's license would have been revoked without the generation of any record of state fraud.

372. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his economic standing.

373. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his economic standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

374. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his reputational standing.

375. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his reputational standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

376. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his livelihood.

377. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his livelihood, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

378. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his liberty.

379. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his liberty, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

380.I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his life.

381. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his life, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

382. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his professional standing.

383. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his professional standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

384. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his social standing.

385. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his social standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

386. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his psychological standing.

387. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his psychological standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

388. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his physical standing.

389. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his physical standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

390. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his financial standing.

391. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his financial standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

392. I admit that without a record of state fraud, Plaintiff Kaul would have been forever deprived of any opportunity for the re-emergence of his reputational standing.

393. I admit that had Plaintiff Kaul been forever deprived of any opportunity for the re-emergence of his reputational standing, he would never have exposed my crimes and those of **The Kaul Cases** Defendants.

394. I admit that I continued the perpetration of the scheme of fraud in encouraging and coopting lawyers to file malpractice suits on behalf of Plaintiff Kaul's patients referred to them by me, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

395. I admit that I continued up until 2012 in the perpetration of the scheme of fraud in encouraging and coopting personal injury lawyers to stop referring their injured clients to Plaintiff Kaul, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

### c. Healthcare Profession Obstruction

396. I admit, as detailed in the below admitted facts, a direct connection between Plaintiff Kaul's ability to retain medical experts in 2013 to testify in the illegal revocation proceeding and the exposing in 2023 of my involvement in a criminally minded and criminal scheme that commenced in 2005 and expanded to involve **The Kaul Cases** Defendants and others.

397. I admit that in recognizing the direct connection between Plaintiff Kaul's litigation purposed retention of medical experts and the exposing of my crimes, I did conspire with **The Kaul Cases** Defendants to attempt to sabotage the relationship between Plaintiff Kaul and his experts.

398. I admit that I and members of **The Kaul Cases** Defendants perpetrated a fraud on members of the New Jersey medical community by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

399. I admit that I conspired with other members of **The Kaul Cases** Defendants, including Defendant Christie and members of the Office of the New Jersey Attorney General, to instruct members of the New Jersey medical community to not provide expert opinion on behalf of Plaintiff Kaul in any legal matter, including the revocation proceeding.

400. I admit that I used my immense political power within the neurosurgical societies to coerce its members to refuse to conduct healthcare related business with any physicians that supported Plaintiff Kaul.

401. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that supported Plaintiff Kaul by filing knowingly false complaints against them to have their hospital privileges revoked.

402. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that supported Plaintiff Kaul by filing knowingly false complaints against them to have their licenses suspended and or revoked.

403. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that supported Plaintiff Kaul by filing against them knowingly false complaints of insurance fraud.

404. I admit that I used my immense political power within the neurosurgical societies to coerce its members to encourage physicians to use the US wires to disseminate knowingly fraudulent information that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery

405. I admit that I knew the purpose of my fraudulent scheme on members of the New Jersey medical community was to render Plaintiff Kaul unable to find medical experts to fight the revocation proceedings in the courts of law.

406. I admit that I knew that without medical experts, Plaintiff Kaul would not have been able to contest the revocation proceedings.

407. I admit that I conspired with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of medical experts.

408. I admit that the medical expert deprivation scheme was perpetrated by using the US wires and my immense political power within professional spine societies to manipulate potential minimally invasive spine experts.

409. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's reputation would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

410. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's economic standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

411. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's physician livelihood would deprive him of his ability to earn a wage, and prevent the payment of medical expert fees.

412. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's liberty would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

413. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's life would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

414. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's professional standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

415. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's social standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

416. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's psychological standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

417. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's physical standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

418. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's financial standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

419. I admit that the manipulation of potential minimally invasive spine experts was perpetrated with claims that the injury caused by our scheme to Plaintiff Kaul's reputational standing would deprive him of his ability to secure any wage-paying job and or outside funding, and prevent the payment of medical expert fees.

420. I admit that I knew that without contesting the revocation proceedings, Plaintiff Kaul would not have been able to create a record of the evidential fraud committed and aided and abetted by myself and **The Kaul Cases** Defendants.

421. I admit that I knew that without the record of evidential fraud, Plaintiff Kaul would never have been able to generate proof of the fraud preceding the revocation proceedings.

422. I admit that I knew that without the record of evidential fraud, that even if Plaintiff Kaul had considered the illegality of the circumstances preceding and involving the revocation, he would never have been able to generate proof of the fraud committed before and during the revocation proceedings.

423. I admit that Plaintiff Kaul's ability to retain medical experts to litigate the revocation proceedings caused the generation of evidence that now proves the revocation proceedings were and illegal.

424. I admit that Plaintiff Kaul's ability to retain medical experts to litigate the revocation proceedings caused the generation of evidence that now proves the revocation was and is illegal.

425. I admit that without medical experts to litigate the revocation proceedings, Plaintiff Kaul's license would have been revoked without the generation of any record of state fraud.

426. I admit that I continued the perpetration of the scheme of fraud in encouraging and coopting physicians complaints with the medical board against Plaintiff Kaul, by complaining with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

427. I admit that I continued up until 2012 in the perpetration of the scheme of fraud in encouraging physicians to stop referring patients to Plaintiff Kaul, by stating with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

**d. Insurance Industry Obstruction**

428. I admit that Plaintiff Kaul's has since 2012 materially sustained his existence to a standard to prosecute his claims, despite the perpetration and aiding and abetting by myself and **The Kaul Cases** Defendants of a scheme that embezzled and illegally deprived Plaintiff Kaul of monies owed to him by insurance carriers for care he provided to their fee-paying patients.

429. I admit, as detailed in the below admitted facts, a direct connection between Plaintiff Kaul's ability to exist and prosecute his claims and the exposing in 2023 of my involvement in a criminally minded and criminal scheme that commenced in 2005 and expanded to involve **The Kaul Cases** Defendants and others.

430. I admit that in recognizing the direct connection between Plaintiff Kaul's insurance based professional fee payment material existence and the exposing of my crimes, I did conspire with **The Kaul Cases** Defendants to perpetrate and aid and abet a knowingly illegal scheme of deprivation of payment.

431. I admit that I recognized that the stronger was Plaintiff Kaul's financial position, the greater was the risk of him exposing my crimes and those of **The Kaul Cases** Defendants.

432. I admit that I believed that if I and **The Kaul Cases** Defendants forced Plaintiff Kaul into a state of poverty, he would not expose our crimes.

433. I admit that the crimes committed by myself, and **The Kaul Cases** Defendants did force Plaintiff Kaul into a state of poverty.

434. I admit that the United States District Court granted Plaintiff Kaul in forma paupera status.

435. I admit that Plaintiff Kaul's exposition of my crimes and those of **The Kaul Cases** Defendants, despite his official state of poverty, evidences the fact that I and **The Kaul Cases** Defendants committed with a long-standing sense of privileged impunity, a massive amount of felonious conduct over almost two (2) decades.

436. I admit that I and members of **The Kaul Cases** Defendants perpetrated a fraud on members of the insurance industry by using the US wires to state with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

437. I admit that the purpose of using the US wires to disseminate the knowing falsity that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery, was to deprive Plaintiff Kaul of monies owed to him by insurance carriers for care he provided to their fee-paying patients.

438. I admit that I conspired with other members of **The Kaul Cases** Defendants, including Defendant Christie and members of the Office of the New Jersey Attorney General, to encourage members of the insurance industry to deprive Plaintiff Kaul of his legally mandated professional fees.

439. I admit that in conspiring with members of the insurance industry in the professional fee deprivation scheme, I did knowingly aid and abet the commission of a crime of theft of services against Plaintiff Kaul.

440. I admit that I used my immense political power within the neurosurgical societies to coerce its members to refuse to conduct healthcare related business with any insurance carriers that conducted business with Plaintiff Kaul.

441. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that continued to conduct any business with any insurance carriers that continued to conduct business with Plaintiff Kaul, by filing knowingly false complaints against these physicians to have their hospital privileges revoked.

442. I admit that I used my immense political power within the neurosurgical societies to have effectuated a sanctions-like scheme against members that either violated and or opposed my orders.

443. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that continued to conduct any business with any insurance carriers that continued to conduct business with Plaintiff Kaul, by filing knowingly false complaints against them to have their licenses suspended and or revoked.

444. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally undermine any physicians that continued to conduct any business with any insurance carriers that continued to conduct business with Plaintiff Kaul, by filing against them knowingly false complaints of insurance fraud.

445. I admit that I used my immense political power within the neurosurgical societies to coerce its members to use the US wires to disseminate the names of those members who continued to conduct any business with any insurance carriers that continued to conduct business with Plaintiff Kaul.

446. I admit that I used my immense political power within the neurosurgical societies to coerce its members to use the US wires to disseminate the names of those members who continued to provide any manner of support to Plaintiff Kaul.

447. I admit that I knew a purpose of my illegal sanctions-like scheme against neurosurgical society members who violated or opposed my orders, was to punish those that failed to comply with my orders.

448. I admit that I knew a purpose of my illegal sanctions-like scheme against neurosurgical society members who violated or opposed my orders, was to ostracize those that failed to comply with my orders.

449. I admit that I knew a purpose of my illegal sanctions-like scheme against neurosurgical society members who violated or opposed my orders, was to intimidate other members into coercing insurance carriers, with whom they conducted business, into depriving Plaintiff Kaul of his professional fees.

450. I admit that the ultimate purpose of my sanctions-like scheme against non-complying neurosurgical society members was to prevent Plaintiff Kaul from exposing my crimes and those of **The Kaul Cases** Defendants.

451. I admit that I believed that by causing and or coercing insurance carriers into depriving Plaintiff Kaul of his professional fees, he would be rendered financially unable to contest the revocation proceedings.

452. I admit that I conspired with **The Kaul Cases** Defendants to illegally attempt to cause and or coerce insurance carriers to illegally deprive Plaintiff Kaul of his professional fees.

453. I admit that the professional fee deprivation scheme was perpetrated by using the US wires and my immense political power within professional spine societies to manipulate the members into causing and or coercing insurance carriers to deprive Plaintiff Kaul of his professional fees.

454. I admit that multiple neurosurgical society members occupy controlling seats on insurance industry panels that determine payment.

455. I admit that I used the US wires in a knowingly illegal manner to conspire with these members to deny the payment of Plaintiff Kaul's professional fees.

456. I admit that I and **The Kaul Cases** Defendants convinced insurance carriers that there would be no repercussions to illegally depriving Plaintiff Kaul of his professional fees.

457. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's reputation by associated attacks on his economic standing/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

458. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's economic standing by associated attacks on his reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

459. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's livelihood by associated attacks on his reputation/economic standing/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

460. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>liberty</u> by associated attacks on his reputation/economic standing/livelihood/life/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

461. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>life</u> by associated attacks on his reputation/economic standing/livelihood/liberty/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

462. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>professional standing</u> by associated attacks on his life/reputation/economic standing/livelihood/liberty/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

463. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>social standing</u> by associated attacks on his life/reputation/economic standing/livelihood/liberty/professional standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

464. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>psychological standing</u> by associated attacks on his life/reputation/economic standing/livelihood/liberty/professional standing/social standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

465. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>physical standing</u> by associated attacks on his life/reputation/economic standing/livelihood/liberty/professional standing/social standing/psychological standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

466. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>financial standing</u> by associated attacks on his life/reputation/economic standing/livelihood/liberty/professional standing/social standing/psychological standing/physical standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

467. I admit that the professional fee deprivation scheme was coerced with claims that the permanency of the injury caused to Plaintiff Kaul's <u>reputational standing</u> by associated attacks on his life/economic standing/livelihood/liberty/professional standing/social standing/psychological standing/physical standing/financial standing would cause his permanent elimination, and eliminate the threat of any future challenge to the professional fee deprivation scheme.

468. I admit that I believed that by illegally depriving Plaintiff Kaul of his professional fees he would be deprived respectively of his ability and right to fund and retain counsel, and would actually be deprived of counsel to contest the revocation proceedings.

469. I admit that I knew that without contesting the revocation proceedings, Plaintiff Kaul would never have been able to create a record of the evidential fraud of the revocation proceedings committed and aided and abetted by myself and **The Kaul Cases** Defendants.

470. I admit that I knew that without the record of evidential fraud, Plaintiff Kaul would never have been able to generate proof of the fraud preceding the revocation proceedings.

471. I admit that I knew that without the record of evidential fraud of the revocation proceedings, that even if Plaintiff Kaul had considered the illegality of the circumstances preceding and involving the revocation, he would never have been able to generate proof of the fraud committed before and during the revocation proceedings.

472. I admit that Plaintiff Kaul's ability, despite the professional fee deprivation scheme, to litigate the revocation proceedings caused the generation of evidence that now proves the revocation proceedings were and illegal.

473. I admit that Plaintiff Kaul's ability, despite the professional fee deprivation scheme, to litigate the revocation proceedings caused the generation of evidence that now proves my guilt of the levied charges.

474. I admit that despite the professional fee deprivation scheme, Plaintiff Kaul was able to litigate the revocation proceedings

475. I admit that Plaintiff Kaul's litigation of the revocation proceedings caused the generation of evidence that now proves the revocation was and is illegal.

476. I admit that had Plaintiff Kaul not litigated the revocation proceedings, his license would have been revoked without the generation of any record of state fraud.

477. I admit that I knew and know that on or about March 23, 2013, approximately seventeen (17) days before the commencement of the revocation proceedings, Doreen Hafner, a lawyer employed by the State of New Jersey, attempted to have Plaintiff Kaul admit to her charges and

to agree to have his license revoked for seven (7) years and pay five hundred thousand dollars ($500,000).

478. I admit that I knew and know that the purpose of Hafner's proposal was to prevent litigation that she knew would result in the generation of evidence that now proves my guilt of the levied charges.

479. I admit that I knew and know that the purpose of Hafner's proposal was to prevent litigation that she knew would result in the generation of evidence that now proves that the revocation proceedings were conducted illegally.

480. I admit that I knew and know that the purpose of Hafner's proposal was to prevent litigation that she knew would result in the generation of evidence that proves that the revocation was, is and remains illegal.

481. I admit that I knew and know that the administrative law judge attempted to persuade Plaintiff Kaul to accept Hafner's proposal.

482. I admit that I knew and know that Plaintiff Kaul rejected Hafner's proposal.

483. I admit that I believe that Plaintiff Kaul rejected Hafner's proposal because he knew that his litigation of the proceedings would generate evidence favorable to his cause.

484. I admit that the evidence generated in 2013 and thereafter now indeed proves Plaintiff Kaul's cause and my guilt of the charges levied in **The Kaul Cases**, including those of K11-10.

485. I admit that I, in conspiracy with **The Kaul Cases** Defendants, continued to aid and abet the perpetration of the professional fee deprivation scheme up until approximately July 30, 2020, the date of closure of Bankruptcy Petition: 13-23366, a case filed on June 17, 2013.

486. I admit I knew and know that the professional deprivation scheme was illegally perpetrated through the United States Bankruptcy Court for the District of New Jersey.

487. I admit I knew and know through communications with my lawyer of the truthfulness of the claims of the Adversarial Complaint asserted by Plaintiff Kaul in Case No. 18-01489 in the United States Bankruptcy Court, filed on September 20, 2018.

489. I admit I knew and know that Case No. 18-01489 was almost dismissed because it exposed, amongst many other felonies, the professional fee deprivation scheme.

### e. Political Body Obstruction

490. I admit that up until February 22, 2016, the date Plaintiff Kaul filed K1, I and **The Kaul Cases** Defendants believed that the Plaintiff Kaul elimination scheme would <u>absolutely</u> succeed.

491. I admit that this belief in its absolute success, in conjunction with the belief that Defendant Christie would become the 2016 American President, accounts for the impunity with which I and **The Kaul Cases** Defendants conducted the commission of a pattern of felonious conduct that commenced in 2005 and is ongoing.

492. I admit that an element of the Plaintiff Kaul elimination scheme involved using the media to perpetrate a public dehumanization and vilification of Plaintiff Kaul.

493. I admit that both I and **The Kaul Cases** Defendants knew and know, that coercing a majority of members of the political body into propagating and perpetuating the dehumanization and vilification scheme was critical to its success.

494. I admit that I knew and know that the majority of the public would never doubt state actions and would never believe a dehumanized and vilified Plaintiff Kaul.

495. I admit that the public dehumanization and vilification scheme provided me and **The Kaul Cases** Defendants a sense, albeit false, that our knowingly felonious conduct was justified.

496. I admit that I used my immense political power with the neurosurgical community and the general medical community to propagate the knowingly false dehumanization and vilification scheme and narrative.

497. I admit that the purpose of the propagation was to attempt to cause a global isolation of Plaintiff Kaul.

498. I admit that I and **The Kaul Cases** Defendants knew and know that Plaintiff Kaul had worked and been educated and trained in many foreign countries, with which he had maintained substantial personal and professional contact.

499. I admit that the purpose of the dehumanization and vilification related global isolation was to attempt to ensure the permanency of Plaintiff Kaul's global elimination, in an attempt to ensure that my crimes and those of **The Kaul Cases** Defendants would never be exposed.

500. I admit that it was my intention and that of **The Kaul Cases** Defendants to coopt and capture the political body to manipulate the public into perceiving Plaintiff Kaul as 'public enemy number one'.

501. I admit that the principal reason for the Plaintiff Kaul elimination scheme purposed 'public enemy number one' mischaracterization was to prevent Plaintiff Kaul from exposing both my long-standing pattern of felonious conduct and that of **The Kaul Cases** Defendants.

502. I admit that I and **The Kaul Cases** Defendants recognized that upon the April 2, 2012, commencement of the malicious and wide publicization of the revocation proceedings, Plaintiff Kaul would seek assistance from members of the political body.

503. I admit that I know that Plaintiff Kaul did in fact commence seeking assistance from members of the political body.

504. I admit that I know that Plaintiff Kaul's efforts in seeking assistance from members of the political body involved him telephoning and sending letters to his political representatives.

505. I admit that I know that Plaintiff Kaul's efforts in seeking assistance from members of the political body involved having patients of his, who were involved in the New Jersey political process, to enquire as to the truth of why the state had commenced revocation proceedings.

506. I admit that I know that the substance of Plaintiff Kaul's direct written communications to member of the political body pertained to his enquiry as to the truth of why the state had commenced revocation proceedings.

507. I admit that I knew and know that all members of the political body and their agents, had been ordered by Defendant Christie and his agents to ignore all enquiries made by Plaintiff Kaul, his patients and or any persons acting on his behalf.

508. I admit that I knew and know that all enquiries were in fact ignored.

509. I admit that I and members of **The Kaul Cases** Defendants perpetrated a fraud on members of the political body by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

510. I admit that I conspired with other members of **The Kaul Cases** Defendants, including Defendant Christie and members of the Office of the New Jersey Attorney General, to instruct members of the political body to not provide any support to Plaintiff Kaul.

511. I admit that I used my immense political power within the neurosurgical societies to coerce its members to threaten to refuse to provide political campaign monies to any members of the political body, if they responded to any of Plaintiff Kaul's enquiries

512. I admit that I used my immense political power within the neurosurgical societies to coerce its members to threaten to refuse to provide political campaign monies to any members of the political body that provided any manner of support to Plaintiff Kaul.

513. I admit that I used my immense political power within the neurosurgical societies to coerce its members to threaten to refuse to provide political campaign monies to any members of the political body that provided any revocation proceeding related information to Plaintiff Kaul.

514. I admit that I used my immense political power within the neurosurgical societies to coerce its members to refuse to provide political campaign monies to those members of the political body who violated my order and provided information and or support to Plaintiff Kaul.

515. I admit that I used my immense political power within the neurosurgical societies to coerce its members to ostracize those neurosurgical members who violated my order by providing political campaign donations to political body members who supported and or provided information to Plaintiff Kaul.

516. I admit that I used my immense political power within the neurosurgical societies to coerce its members to professionally attack with complaints to, amongst others, medical boards, hospital credentialing committees and insurance companies, those neurosurgical members who violated my order by providing political campaign donations to political body members who supported and or provided information to Plaintiff Kaul.

517. I admit that a principal purpose my egregious abuse of my immense power with members of the neurosurgical societies and political body was to attempt to ensure the absolute elimination of Plaintiff Kaul in order to attempt to ensure he never exposed my crimes and those of **The Kaul Case**s Defendants.

518. I admit that I and **The Kaul Cases** Defendants knew the purpose of our coopting and capture of the political body and its members was to render Plaintiff Kaul absolutely isolated and unable to find any political support to fight the revocation proceedings in the courts of public opinion and law.

519. I admit that I knew that depriving Plaintiff Kaul of political support was a necessary element of the scheme to respectively attempt to destroy and deprive Plaintiff Kaul of his determination and ability to contest the revocation proceedings.

520. I admit that I knew and know that this scheme of destruction and deprivation were critical elements of the overall scheme of a permanent global elimination of Plaintiff Kaul.

521. I admit that I knew and know that the purpose of the permanent global elimination of Plaintiff Kaul was to prevent the exposition by Plaintiff Kaul of the decades-plus long pattern of felonious conduct of myself and **The Kaul Cases** Defendants.

522. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>economic</u> standing would prevent the payment of political campaign donations.

523. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>reputation</u> would deprive him of his ability to secure any wage-paying job and or outside funding and would prevent the payment of political campaign donations.

524. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his physician <u>livelihood</u> would deprive him of his ability to earn a wage and would prevent the payment of political campaign donations.

525. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>liberty</u> would deprive him of his ability to secure any wage-paying job and would prevent the payment of political campaign donations.

526. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>life</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

527. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>professional standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

528. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>social standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

529. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>social standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

530. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political  support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>psychological standing</u> would deprive him of

his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

531. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>physical standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

532. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>financial standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

533. I admit that my conspiracy with **The Kaul Cases** Defendants to attempt to deprive Plaintiff Kaul of political support through the coopting and capture of the political body and its members, was perpetrated by using the US wires to manipulate political body members with claims that the injury caused by our scheme to his <u>reputational standing</u> would deprive him of his ability to secure any wage-paying job, and prevent the payment of political campaign donations.

534. I admit that I believed that by depriving Plaintiff Kaul of political support it would respectively destroy and deprive him of his determination and ability to contest the revocation proceedings.

535. I admit that I knew that a destruction of Plaintiff Kaul's determination and a deprivation of his ability to contest the revocation proceedings, would have prevented Plaintiff Kaul from creating a record of the evidential fraud committed and aided and abetted by myself and **The Kaul Cases** Defendants.

536. I admit that I continued the perpetration of the scheme of fraud in encouraging and coopting members of the political body to not support Plaintiff Kaul's requests for information and assistance, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

537. I admit that I continued the perpetration of the scheme of fraud in encouraging and coopting members of the political body to not support requests for information and assistance from persons acting on behalf of Plaintiff Kaul, by telling them with knowing falsity, that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

538. I admit that I continued and am continuing the perpetration of the scheme of fraud in encouraging and coopting members of the political body to actively obstruct Plaintiff Kaul's efforts to have his New Jersey license reinstated, by telling them that to so would be a tacit admission of my guilt and that of **The Kaul Cases** Defendants.

539. I admit that I continued and am continuing the perpetration of the scheme of fraud in encouraging and coopting members of the political body to actively obstruct Plaintiff Kaul's efforts to have his New Jersey license reinstated, by telling them that to so would empower Plaintiff Kaul in the prosecution of claims against us.

540. I admit that I continued and am continuing the perpetration of the scheme of fraud in encouraging and coopting members of the political body to actively obstruct Plaintiff Kaul's efforts to have his New Jersey license reinstated, by telling them that to so would empower Plaintiff Kaul in the prosecution of his claims against us.

541. I admit that I know that an empowerment of the prosecution of the claims against us will further expedite an even more detailed exposition of the crimes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks knowingly committed and aided and abetted by myself and **The Kaul Cases** Defendants over at least the last two (2) decades.

542. I admit that I know that a more detailed exposition of the crimes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks knowingly committed and aided and abetted by myself and **The Kaul Cases** Defendants over at least the last two (2) decades will reveal multiple grave miscarriages of justice committed against innocent, principally ethnic minority physicians.

543. I admit that I have read the testimony transcript in the matter of USA v Pompy: 18-cr-20454 of James Stewart Howell, an undercover investigator for Blue Cross Blue Shield Insurance Company (copy attached).

544. I admit that I know that the scheme detailed by Howell has been conducted on many occasions in the State of New Jersey, because I have spoken to a number of physicians with whom I conduct healthcare business, and who are employed by Horizon Blue Cross Blue Shield of New Jersey in the perpetration of such schemes.

545. I admit that although I have not directly participated in such schemes, I conduct healthcare business with physicians who use such schemes to eliminate physicians who pose a competitive threat to our business interests.

546. I admit that I know that in approximately August 2015, members of the political body and agents representing Defendant Christie attempted to entrap Plaintiff Kaul in a corruption 'sting operation' by having one of Plaintiff Kaul's physician colleagues organize a meeting with the physician colleagues private wealth manager, on the pretext that this individual, recognizing the

injustice of the revocation and having business connections with the state, wished to assist Plaintiff Kaul in his effort to have his license reinstated.

547. I admit that I know that at the meeting the private wealth manager asked Plaintiff Kaul if he would be willing to donate ten million dollars ($10,000,000) to Defendant Christie's political campaign, he could likely have his license reinstated.

548. I admit that I know that Plaintiff Kaul responded with **"I don't condone such conduct"** and shortly thereafter departed the meeting.

549. I admit that I know Plaintiff Kaul reported these events to a number of people, one of whom submitted an affidavit contained in the EVIDENTIAL EXHIBITS.

**RICO Predicate Act Of Evidential Tampering**

550. I admit that I knew about the scheme of evidential tampering.

551. I admit that I did aid and abet the scheme of evidential tampering by failing to report this crime to prosecutorial authorities anywhere in the United States,

552. I admit that I knew that because the illegal revocation of Plaintiff Kaul's New Jersey license would illegally violate his right in these states to procure a license and that therefore prosecutors in these states had jurisdiction to file charges against me for aiding and abetting the crime of evidential tampering.

**RICO Predicate Act Of Witness Tampering**

553. I admit that the scheme of witness tampering in which I knowingly engaged, involved encouraging patients and physicians to lie under oath.

554. I admit that my encouragement of patients to lie under oath, involved instructing them to fabricate and provide knowingly false testimony under oath that their pain increased and that they experienced arm and leg numbness and muscular weakness after having been operated on by Plaintiff Kaul.

555. I admit that my encouragement of physicians to lie under oath, involved instructing them to fabricate and provide knowingly false testimony under oath that Plaintiff Kaul was not legally qualified, credentialed and licensed to perform minimally invasive spine surgery and his care had grossly deviated from a standard of care.

**RICO Predicate Act Of Public Corruption**

556. I admit that the scheme of public corruption in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to have Plaintiff Kaul's license illegally revoked.

557. I admit that the scheme of public corruption in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to have conducted grand jury proceedings.

558. I admit that the scheme of public corruption in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to conduct grand jury proceedings to attempt to have Plaintiff Kaul indicted and incarcerated.

559. I admit that the scheme of public corruption in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to coerce, and did coerce the power of the FBI and the US Attorney's Office to commence a criminal investigation against Kaul.

560. I admit that the scheme of public corruption in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to coerce, and did coerce the power of state investigators and prosecutors to commence a criminal investigation against Kaul.

561. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to destroy Plaintiff Kaul's livelihood.

562. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to destroy Plaintiff Kaul' economic standing,

563. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to destroy Plaintiff Kaul' reputation.

564. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to have Plaintiff Kaul incarcerated.

565. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to force Plaintiff Kaul's family into a state of poverty.

566. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to alienate Plaintiff Kaul from his children by forcing them into poverty.

567. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to cause Plaintiff Kaul to commit suicide.

568. I admit that my specific intention in aiding and abetting the perpetration of the scheme of public corruption was to have Plaintiff Kaul's license illegally revoked.

**RICO Predicate Act Of Kickbacks**

569. I admit that the scheme of kickbacks in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to have Plaintiff Kaul's license illegally revoked.

570. I admit that the scheme of kickbacks in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to have conducted grand jury proceedings.

571. I admit that the scheme of kickbacks in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to use, and did use the power of state to conduct grand jury proceedings to attempt to have Plaintiff Kaul indicted and incarcerated.

572. I admit that the scheme of kickbacks in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to coerce, and did coerce the power of the FBI and the US Attorney's Office to commence a criminal investigation against Kaul.

573. I admit that the scheme of kickbacks in which I knowingly engaged, involved the funneling of bribes to, amongst others, Defendant Christie, who in exchange promised to coerce, and did coerce the power of state investigators and prosecutors to commence a criminal investigation against Kaul.

574. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to destroy Plaintiff Kaul's livelihood.

575. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to destroy Plaintiff Kaul' economic standing,

576. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to destroy Plaintiff Kaul' reputation.

577. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to have Plaintiff Kaul incarcerated.

578. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to force Plaintiff Kaul's family into a state of poverty.

579. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to alienate Plaintiff Kaul from his children by forcing them into poverty.

580. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to cause Plaintiff Kaul to commit suicide.

581. I admit that my specific intention in aiding and abetting the perpetration of the scheme of kickbacks was to have Plaintiff Kaul's license illegally revoked.

## 2016 – 2022

### RICO Predicate Act Of Bribery

582. I admit that the scheme of bribery in which I knowingly engaged, did at some point after February 22, 2016, extend to persons employed within the United States District Court.

583. I admit that in the conception and perpetration of the scheme of bribery within the United States District Court, I knowingly and willfully deprived Plaintiff Kaul of his human and constitutional rights.

584. I admit that the principal purpose of the scheme of bribery that extended to persons employed within the United States District Court was to prevent Plaintiff Kaul from further exposing the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks.

585. I admit that I knew and know that my involvement in the scheme of bribery constitutes a pattern of felonious conduct.

586. I admit that I knew and know that this felonious conduct, under criminal prosecution, will cause my incarceration.

587. I admit that I know that my perpetration and the aiding and abetting of the perpetration of the scheme of bribery with persons employed within the United States district Court constitutes an ongoing pattern of felonious conduct.

588. I admit that the perpetration of the scheme of bribery with persons employed within the United States District Court involved the funneling of bribes to certain district court judges in exchange for dismissing Plaintiff Kaul's cases.

589. I admit that bribes were funneled to certain district court judges through lawyers and law firms.

590. I admit that the first district judge to which Plaintiff Kaul's first lawsuit (K1) was assigned, had represented me in 1999 in the matter of Howard v UMDNJ (ESX-L-2366-99 -New Jersey Superior Court) in the New Jersey Supreme Court.

591. I admit that in Howard v UMDNJ a jury had entered a verdict against me of $5.2 million for having operated on an otherwise healthy thirty-five (35) year old man, and causing him to become quadriplegic.

592. I admit that in K1 I, through my lawyers, funneled bribes to the ex-law firm of the district judge, a law firm in which he had been the managing director.

593. I admit that neither I nor my lawyer nor the district judge disclosed this conflict of interest to Plaintiff Kaul, the record, or the Court.

594. I admit that this conflict of interest was revealed to the record by Plaintiff Kaul on May 22, 2019, after which the district court judge became disqualified.

595. I admit that in the period from 2005/2006 to 2022, I paid bribes to certain state and federal judges that were part of a quid pro quo scheme in which the bribes were exchanged for the judges' dismissals of all cases filed by Plaintiff Kaul in American courts.

596. I admit that my pattern of judicial bribery continued into the United States District Court for the Southern District of New York in Kaul v ICE: 21-CV-06992 (K11-7).

597. I admit that my specific intention in perpetrating the scheme of bribery was to prevent Plaintiff Kaul from exposing my crimes and those of **The Kaul Cases** Defendants, the crimes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks.

598. I admit that I knew the bribes funneled to the K11-7 district judge were part of a quid pro quo scheme in exchange for which the district judge entered an order on September 12, 2022, that dismissed Plaintiff Kaul's case with prejudice.

599. I admit that I knew the bribes funneled to the K11-7 district judge were part of a quid pro quo scheme in exchange for which the district judge entered an order on September 12, 2022, that attempted to permanently prevent Plaintiff Kaul from forever seeking any relief in any American court.

600. I admit that I knew the bribes funneled to the K11-7 district judge were part of a quid pro quo scheme in exchange for which the district judge entered an order on September 12, 2022, that attempted effectively to have Plaintiff Kaul jailed if he ever filed a case seeking relief.

601. I admit I knew that the district judge, through intermediaries, demanded a bribe much larger than that funneled in previous cases, before he agreed to use the power of the United States District Court to enter the September 12, 2022, order.

602. I admit that I knew, through conversations with my then lawyer, that the district judge knew his September 12, 2022, order was the product of bribery, was fraudulent in nature and violative of the law.

603. I admit I knew that the district judge, through intermediaries, demanded a bribe much larger than that funneled in previous cases, before he agreed to use the power of the United States District Court to further, and in such a knowingly egregious manner, violate Plaintiff Kaul's human and constitutional rights.

604. I admit I knew that the purpose of the K11-7 order was draconian in that it sought to permanently deprive Plaintiff Kaul of his right to substantive due process, and to cause a cessation of his existence.

605. I admit that I knew the purpose of the K11-7 order was draconian in that it sought to permanently and illegally deprive Plaintiff Kaul of his right to his livelihood, liberty, and life.

606. I admit that I knew **The Kaul Cases** Defendants while seeking to deprive Plaintiff Kaul of his right to due process in the American courts, were simultaneously conspiring to obstruct and were obstructing his efforts to have the State of Pennsylvania issue his medical license number.

607. I admit that I knew the purpose of the scheme of obstruction of license and deprivation of due process were elements of a wider conspiracy to cause the cessation of Plaintiff Kaul's existence.

608. I admit that the bribe monies were funneled from my lawyer to the K11-7 corporate defendants lawyers who then funneled them to the district court judge and persons related to him to the third degree.

609. I admit that I knew and know that the purpose of funneling my bribe monies through lawyers and law firms to the district judge was to provide 'attorney-client' cover for the scheme.

610. I admit that I knew and know that the purpose of the 'attorney-client' cover was and is an illegal attempt to obstruct any civil and or criminal investigation.

611. I admit that bribes were indirectly funneled to the district court judge by first funneling them to the corporate defendants, who then converted the monies into stocks and shares and transmitted them to the K11-7 district judge.

612. I admit that the funneling of bribes through the corporate defendants involved the sham purchase of corporate shares.

613. I admit that I knew and know that the corporate shares, purchased with fraudulent intent, were then funneled to the K11-7 district judge as part of the bribery related quid pro quo scheme.

614. I admit that I knew and know that in exchange for the bribery related corporate shares, the district judge dismissed K11-7 with prejudice and effectively threatened Plaintiff Kaul with jail if he ever sought to vindicate his human and constitutional rights.

615. I admit that the funneling of bribes through the corporate defendants also involved the purchasing of sham consulting and legal services from their lawyers by my lawyers.

616. I admit that these sham consulting and legal service-related bribes were then funneled to the corporate defendants lawyers, who funneled them to the district court judge and persons related to him to the third degree.

617. I admit that the funneling of bribes through the corporate defendants involved the sham purchase of corporate shares.

618. I admit that bribes were indirectly funneled to certain district court judges by first funneling them to the corporate defendants, who then transmitted them to certain district court judges in the form of stocks and shares.

619. I admit that in a period from 2005/2006 to 2022 I conspired to attempt to conceal the scheme of bribery by using the US wires to falsely disseminate to the public that Plaintiff Kaul was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

620. I admit that in my scheme of concealment I did not inform the public that Plaintiff Kaul's license was revoked because of, amongst other things, my scheme of bribery.

621. I admit that in my scheme of concealment I did not inform the public that Plaintiff Kaul's license was revoked not because he was not qualified/credentialed/licensed/trained to perform minimally invasive spine surgery.

622. I admit that in my scheme of concealment I did not inform the public that Plaintiff Kaul's license was actually revoked because I and others concluded his expertise in outpatient minimally invasive spine surgery presented a substantial and expanding threat to our hospital-based spine business.

623. I admit that my aiding and abetting the perpetration of the scheme of bribery were purposed to cause circumstances that would destroy and did destroy Plaintiff Kaul's economic standing/reputation/livelihood/liberty/life.

624. I admit that my aiding and abetting the perpetration of the scheme of bribery were purposed to cause circumstances that would destroy and did destroy the lives of Plaintiff Kaul's children.

625. I admit that my aiding and abetting the perpetration of the scheme of bribery destroyed Plaintiff Kaul's livelihood.

626. I admit that my aiding and abetting the perpetration of the scheme of bribery destroyed Plaintiff Kaul's economic standing,

627. I admit that my aiding and abetting the perpetration of the scheme of bribery destroyed Plaintiff Kaul's reputation.

628. I admit that my aiding and abetting the perpetration of the scheme of bribery had Plaintiff Kaul kidnapped on May 27, 2021.

629. I admit that my aiding and abetting the perpetration of the scheme of bribery had Plaintiff Kaul incarcerated

630. I admit that my aiding and abetting the perpetration of the scheme of bribery forced Plaintiff Kaul's family into a state of poverty.

631. I admit that my aiding and abetting the perpetration of the scheme of bribery alienated Plaintiff Kaul from his children by forcing them into poverty.

632. I admit that I know that the admissions within this document, if not timely rebutted/contested/refuted, regardless of the ultimate civil disposition of the summary judgment motion, will substantiate a basis for criminal indictment.

**RICO Predicate Act Of Public Corruption**

633. I admit that the scheme of public corruption in which I knowingly engaged, did at some point after February 22, 2016, extend to include persons employed within the United States District Court.

634. I admit that the principal purpose of the scheme of public corruption that extended into the United States District Court was to prevent Plaintiff Kaul from further exposing the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks.

635. I admit that I knew and know that my involvement in the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks constitutes a pattern of felonious conduct.

636. I admit that I knew and know that this felonious conduct, under criminally prosecution, will cause my incarceration.

637. I admit that I know that my perpetration and the aiding and abetting of the perpetration of the scheme of public corruption in the United States district Court constitutes an ongoing pattern of felonious conduct.

638. I admit that the perpetration of the scheme of public corruption in the United States District Court involved the funneling of bribes to certain district court judges in exchange for dismissing Plaintiff Kaul's cases.

**RICO Predicate Act Of Kickbacks**

639. I admit that the scheme of kickbacks in which I knowingly engaged, did at some point after February 22, 2016, extend to persons employed within the United States District Court.

640. I admit that the principal purpose of the scheme of kickbacks that extended to persons employed within the United States District Court was to prevent Plaintiff Kaul from further exposing the schemes of bribery, fraud, evidential tampering, witness tampering, public corruption, and kickbacks.

641. I admit that I knew and know that my involvement in the scheme of kickbacks constitutes a pattern of felonious conduct.

642. I admit that I knew and know that this felonious conduct, under criminally prosecution, will cause my incarceration.

643. I admit that I know that my perpetration and the aiding and abetting of the perpetration of the scheme of kickbacks with persons employed within the United States district Court constitutes an ongoing pattern of felonious conduct.

644. I admit that the perpetration of the scheme of kickbacks with persons employed within the United States District Court involved the funneling of bribes to certain district court judges in exchange for dismissing Plaintiff Kaul's cases.

645. I admit that kickbacks were funneled to certain district court judges through lawyers and law firms.

646. I admit that kickbacks were indirectly funneled to certain district court judges by first funneling them to the corporate defendants, who then transmitted them to certain district court judges in the form of stocks and shares.

647. I admit that the funneling of kickbacks through the corporate defendants involved the sham purchase of corporate shares.

648. I admit that the funneling of kickbacks through the corporate defendants involved the purchasing of sham legal services from their lawyers by my lawyers.

649. I admit that the kickbacks funneled to the corporate defendants lawyers were then funneled to certain district court judges and persons related to the third degree.

## **Evidential Exhibits**

650. I admit that the documents contained within the Evidential Exhibits were placed in my possession by my counsel, Mr. Edward Sponzilli.

651. I admit that I have read the documents contained within the Evidential Exhibits.

652. I admit that I know the documents are organized into three exhibits that cover the time periods from 1998 to 2014, 2015 to 2020 and 2021 to 2022.

653. I admit that my counsel explained to me the context, content, relevance, and purpose of these documents.

654. I admit that I understand the context of these documents.

655. I admit that I understand the content of these documents.

656. I admit that I understand the relevance of these documents

657. I admit that I understand the purpose of these documents.

658. I admit that my counsel explained to me the evidence and facts contained within these documents.

659. I admit that I know and understand the evidence and facts contained within these documents.

660. I admit that I had the right, opportunity, and ability to deny or otherwise refute the evidence and facts contained within these documents.

661. I admit that I have not denied and or otherwise refuted the evidence and facts contained within these documents.

662. I admit that the facts contained within these documents are undisputed.

663. I admit that the facts contained within these documents are admitted.

664. I admit that the facts contained within these documents constitute no genuine issue for trial.

665. I admit that the facts contained within these documents corroborate those admitted within the STATEMEMT OF ADMITTED FACT.

666. I admit that the facts contained within these documents constitute proof of the elements of the charges levied against me by Plaintiff Kaul.

Dated: April 24, 2023